In the

# United States Court of Appeals

## For the Seventh Circuit

---

Nos. 11-3275 & 11-3559

STEPHANIE JANE BOND,

*Plaintiff-Appellee,*

*v.*

MICHAEL R. ATKINSON, *et al.*,

*Defendants-Appellants.*

---

Appeals from the United States District Court
for the Central District of Illinois.
No. 11-CV-2059 — **Michael P. McCuskey**, *Judge.*

---

ARGUED SEPTEMBER 10, 2012 — DECIDED AUGUST 26, 2013

---

Before EASTERBROOK, *Chief Judge*, and CUDAHY and KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Stephanie Bond was shot three times by her husband, who then killed himself. She survived and filed this suit against state and local police officers and other public officials, contending that they violated her constitutional rights under the fourteenth amendment by not enforcing an order of protection issued by a state court and by failing to confiscate her husband's guns after his state-law

right to own firearms had been revoked. As a claim under the fourteenth amendment's due process clause, Bond's suit is doomed by decisions such as *Castle Rock v. Gonzales*, 545 U.S. 748 (2005), and *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989). But Bond invokes the equal protection clause. *DeShaney* observes that equal-protection claims may succeed even when due-process theories fail. 489 U.S. at 197 n.3. A state is not obliged to protect residents from crime (that's the holding of *Castle Rock* and *DeShaney*), but when the state chooses to provide protective services it cannot protect men while failing to protect women. The state must provide *equal* protection of the laws, without discriminating on account of race, sex, religion, or other criteria the Constitution places off limits.

Bond contends in this suit under 42 U.S.C. §1983 that the defendants discriminated against her on account of sex. She does not present a class-of-one claim, on which see *Del Marcelle v. Brown County Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc), but contends that she has been disfavored in common with other women by defendants' failure to enforce the laws against domestic violence and to confiscate guns from potentially dangerous men. Defendants asked the district judge to rule in their favor on the ground of qualified immunity. The court referred this motion to a magistrate judge, who remarked that the rule against sex discrimination is well established and recommended denying the motion. 2011 U.S. Dist. LEXIS 119778 at *18–19 (C.D. Ill. Sept. 8, 2011). The district judge accepted this recommendation, 2011 U.S. Dist. LEXIS 118026 at *4 (C.D. Ill. Oct. 13, 2011), and defendants immediately appealed under the doctrine of *Mitchell v. Forsyth*, 472 U.S. 511 (1985), which treats the rejection of an im-

munity defense as a final decision for the purpose of 28 U.S.C. §1291.

The rule against sex discrimination in law enforcement is clearly established, just as the district court observed. But does Bond's complaint adequately allege sex discrimination? *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), shows that an appellate court may resolve a qualified-immunity appeal by deciding that the complaint does not state a plausible claim.

According to the complaint, relatives of Gabriel Omo-Osagie, Bond's husband, told police in November 2009 that he had become suicidal and potentially violent. Bond herself reported that Omo-Osagie had hit her and had acquired an arsenal of guns, some of them stolen, though he lacked legal authority to own any firearm. A court issued an order of protection requiring Omo-Osagie to stay away from Bond. Police arrested Omo-Osagie for domestic battery, but a state judge released him.

Bond asked the police to confiscate Omo-Osagie's guns; according to the complaint, an officer of the Champaign County sheriff's office replied that, as long as Omo-Osagie's name was on the title to the couple's house, confiscation could proceed only with a court order, which neither the sheriff's office nor Bond ever sought. The complaint adds, however, that neither Illinois law nor the sheriff's office requires judicial permission. (A warrant would have been necessary to enter a house in order to search for the guns over the occupants' protests, but Bond might have had authority to consent to an entry.) In late November Omo-Osagie admitted to some of the defendants that he had violated the order of protection, but (as in *Castle Rock*) he was not arrested. On February 27, 2010, Omo-Osagie shot Bond three times

and then killed himself. Not until March 2010 did the Illinois State Police begin to collect and dispose of Omo-Osagie's weapons.

That's the outline of the complaint's narration, which poses the question: Where's the sex discrimination? Bond does not allege that police confiscate guns from women who should not possess them, while leaving guns in the hands of men who should not possess them. The complaint does not allege that defendants require a warrant to confiscate men's firearms while not waiting for a warrant to confiscate women's firearms. It does not allege that police vigorously enforce protective orders issued for the benefit of men while not enforcing orders issued for the benefit of women. It does not allege that the police arrest women who threaten or attack male domestic partners, while failing to arrest men who threaten or attack female domestic partners. Bond does contend that the police described her as "only crying wolf," but both men and women cry wolf. This is just another way of expressing the proposition that Bond's estimate of the risk differed from the officers' estimate; it does not tend to show sex discrimination.

Bond's principal theory is that enforcing the laws against domestic violence is a low priority for state and local law-enforcement agencies in Illinois. Because roughly 85% of the victims of domestic violence are female, see Bureau of Justice Statistics, *Intimate Partner Violence 1993–2001* (2003), a policy of weak enforcement injures women disproportionately and therefore violates the Constitution.

The problem with that approach is that the harm comes from disparate impact rather than disparate treatment. Some statutes, prominently Title VII of the Civil Rights Act of

1964, deem disparate impact a form of discrimination. See, e.g., *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). (*Griggs* itself concerned race discrimination, but sex discrimination is treated the same under Title VII.) Yet the Supreme Court held in *Washington v. Davis*, 426 U.S. 229 (1976), that disparate impact does not violate the equal protection clause of the fourteenth amendment and cannot be redressed by suits under §1983. See also, e.g., *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979).

To obtain relief, a plaintiff must show intentional discrimination—that the defendants wanted men (but not women) left at large to injure their domestic partners. *Feeney* holds that it is not enough to show that state actors knew that women would fare worse than men under an official policy; instead the plaintiff must show that the state actors adopted that policy because of, not in spite of or with indifference to, its effect on women. *Id.* at 279. Yet Bond's complaint does not allege that any defendant decided to give domestic-relations crimes a low priority *because* that would injure women. The allegation instead is that the defendants thought that Bond and Omo-Osagie were just involved in a "messy divorce" in which the risk of serious violence was modest compared with other crimes such as murder, rape, armed robbery, financial fraud, and sexual abuse of minors. This a sex-neutral reason. Defendants were wrong about the risk Omo-Osagie posed to Bond, but the Constitution does not guarantee mistake-free law enforcement.

The complaint's allegations concerning the non-confiscation of Omo-Osagie's weapons do not even allege a disparate effect on women. Perhaps the defendants violated Illinois law, or perhaps the person to whom Bond spoke lied

to her in an effort to get her to go away, so that he could turn to some other business. We must assume that Bond was told a tall tale. But state law cannot be enforced through §1983. See, e.g., *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir. 1988) (en banc). Bond does not contend that the police confiscated guns from women (but not men) without warrants. Instead she appears to contend that the police confiscated guns from *everyone*, except her husband, without waiting for a warrant. That might have the makings of a class-of-one claim, but Bond's counsel abjured a class-of-one claim both in the appellate briefs and at oral argument. What's more, this court's inability to produce a majority opinion in *Del Marcelle* shows that the law concerning class-of-one challenges to the decisions of the police about which laws to enforce, and how vigorously, is anything but clearly established.

Appellants relied on *Feeney*. Instead of responding (her brief does not even cite *Feeney*), Bond invokes an earlier decision, *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977), for the proposition that the disparate impact of a governmental policy violates the equal protection clause. *Arlington Heights* says the opposite, however. Citing *Washington v. Davis*, the Court wrote that proof of discriminatory intent is essential. It added, as *Washington v. Davis* also had done, that a policy's effects may help a court understand the defendants' intent. Adoption of a policy that bears more heavily on women than on men, yet lacks any apparent justification, could support an inference that the defendants chose the policy because of its adverse effect on women.

It does not take a supposition of animus toward women, however, to explain why domestic-relations investigations receive lower priority than murder, rape, or child abuse investigations. Perhaps a state ought to appropriate the money necessary to allow better enforcement of the domestic-battery and firearms-control laws, but a law-enforcement agency must set priorities in light of the resources in hand. Whether or not the defendants' priorities were unwise, it is not possible given *Feeney* and this complaint's allegations to find them unconstitutional. There is certainly a rational basis for giving murder and rape investigations higher priority than domestic-relations matters, and the equal protection clause does not authorize the judiciary to take over priority-setting for law enforcement. How domestic-relations matters compare with the many other subjects clamoring for law-enforcement attention is for the people to decide through elections and appointments.

Statements made at oral argument lead us to infer that Bond's lawyers have not fully appreciated the difference between disparate impact and disparate treatment. The district judge has discretion to allow Bond to plead again. If she has evidence that defendants protect men from threats of domestic violence while failing to protect similarly situated women, that could demonstrate sex discrimination meeting *Feeney*'s standards. (This is an individual-capacity suit, so the evidence must deal with the conduct of *these* defendants rather than law-enforcement officials in the aggregate.)

If the court allows Bond to re-plead, and she chooses to do so, her lawyers must keep in mind that discrimination in law enforcement must be shown through data; impressions or "information and belief" will not suffice. See *United States*

*v. Armstrong*, 517 U.S. 456 (1996), which not only sets a high evidentiary standard before a court may order discovery into law-enforcement practices but also reiterates that proof of disparate treatment is essential. See also *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 884–87 (7th Cir. 2012). But Bond and her counsel may well conclude that claims under state law provide the best chance of recovery. (An affidavit from one officer calls another's failure to confiscate Omo-Osagie's guns "derelict police work.") If the federal claim is dismissed or abandoned, the district court should relinquish supplemental jurisdiction over Bond's state-law theories.

VACATED AND REMANDED