In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1874

KENDALE L. ADAMS, *et al.*,

*Plaintiffs-Appellants,*

*v.*

CITY OF INDIANAPOLIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:09-CV-00175-SEB-DML — **Sarah Evans Barker**, *Judge.*

ARGUED OCTOBER 1, 2012 — DECIDED FEBRUARY 4, 2014

No. 13-3422

KENDALE L. ADAMS, *et al.*,

*Plaintiffs-Appellants,*

*v.*

CITY OF INDIANAPOLIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:12-CV-01806-SEB-DML — **Sarah Evans Barker**, *Judge*.

SUBMITTED JANUARY 24, 2014[*] — DECIDED FEBRUARY 4, 2014

Before POSNER, WILLIAMS, and SYKES, *Circuit Judges*.

SYKES, *Circuit Judge*. These related cases raise dozens of claims of illegal discrimination in the promotion process used by the Indianapolis Metropolitan Police Department and the Indianapolis Fire Department. The complaints are sprawling and the procedural history is a bit convoluted; we have simplified the presentation of the issues. A large group of black police officers and firefighters sued the City of Indianapolis alleging that the examination process it uses to rank candidates for promotion in the police and fire departments has a disparate impact on black candidates and is intentionally discriminatory. They filed back-to-back lawsuits targeting promotion decisions made in successive promotion cycles dating from 2002, but most of the challenged decisions were based on scores generated from testing protocols administered by the police department in 2008 and the fire department in 2007.

The plaintiffs in the first case are 36 black police officers and firefighters who were passed over for promotions between 2007 and 2009 in favor of candidates who achieved higher

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. The appeal in Case No. 13-3422 is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

composite scores in the 2007 and 2008 testing sessions. The plaintiffs amended their complaint once, and the City then moved for partial judgment on the pleadings. The district court granted the motion and dismissed many of the claims as either time-barred or substantively flawed. In particular, the court dismissed the disparate-impact claims because the amended complaint alleged that the City's promotion process was intentionally biased rather than facially neutral.

The plaintiffs sought leave to amend their complaint again and tendered a proposed second amended complaint, but the district court denied the request on grounds of untimeliness and futility. The disparate-treatment claims then proceeded to summary judgment, and the court entered judgment for the City because the plaintiffs had not produced any evidence that using the test results to make promotions was a pretext for discrimination. The plaintiffs appealed.

In the meantime, some of the plaintiffs—a group of 20 police officers—filed a second lawsuit alleging that they were passed over for promotions again in 2010 and 2011. The district court dismissed the new claims as barred by res judicata because the more recent promotion decisions were made from the same eligibility list generated by the testing process that was at issue in the first case. The plaintiffs appealed this decision as well.

We have consolidated the appeals for decision and now affirm in both cases. The plaintiffs have focused most of their appellate argument on claims of procedural error. They contend that the district court erroneously applied summary-judgment standards at the pleadings stage and wrongly denied

their second motion to amend the complaint. We find no procedural error. We also conclude that judgment for the City was proper in both cases.

First, although the district court mistakenly assumed that allegations of intentional discrimination necessarily defeat a disparate-impact claim, here the disparate-impact claims fail in any event because they are stated as legal conclusions, without any factual content to support an inference that the City's examination procedures caused a disparate impact on black applicants for promotion in the police or fire departments. Second, the disparate-treatment claims lacked any evidentiary support and were properly resolved in the City's favor on summary judgment. Finally, the claims in the second lawsuit are precluded. Although the new complaint concerns a different set of promotion decisions, it attacks the same eligibility list that was at issue in the first case. The plaintiffs' challenge to that testing process was fully and finally resolved against them in the first suit, so their second suit against the City is barred.

## I. Background

The Indianapolis Metropolitan Police Department and the Indianapolis Fire Department share similar promotion procedures. Both departments administer a promotion examination process every few years. The police department did so in 2004, 2006, and 2008; the fire department in 2004 and 2007. For each cycle a "Development Committee" created and implemented the examination process, which consisted of a written test, an oral exercise, and an assessment of the candidate's "personnel

profile." The "oral" exercise had three subparts: an oral interview, an oral assessment in which applicants responded to hypothetical scenarios, and a written exercise requiring the applicants to draft reports and correspondence. The fire department's promotion processes also included a practical exercise.

The Development Committees distributed information booklets to all interested candidates outlining the promotion criteria and instructing them how to participate. After the testing was completed, each candidate's scores on the component parts of the process were combined to create a composite score. The candidates were then ranked on a promotion eligibility list in order of their scores. Subsequent promotion decisions were made from the list. Generally speaking, the department chiefs promoted the highest-ranked candidates in order of their scores, although promotions ultimately were at the chiefs' discretion subject only to approval by "Merit Boards." In one case a black officer was promoted to sergeant ahead of several white candidates with higher scores, but in all other cases, promotions were awarded to the candidates who achieved the highest scores in the 2007 and 2008 testing protocols.

In the first lawsuit—filed in early 2009—26 police officers and 10 firefighters challenged these procedures as racially discriminatory.[1] As relevant here, they alleged claims under 42 U.S.C. § 1983 for violation of their right to equal protection and claims under Title VII of the Civil Rights Act of 1964, as

---

[1] Six plaintiffs later dropped their claims.

amended, 42 U.S.C. §§ 2000e *et seq.*, based on disparate-impact and disparate-treatment theories.[2] Before filing their complaint, and in compliance with the administrative preconditions to suit, the officers and firefighters filed discrimination charges with the EEOC in 2008 and 2009. The charges varied from employee to employee, but generally they alleged that the City's promotion process deprived black officers and fire-fighters of promotional opportunities because the testing process was racially and culturally biased and had been intentionally manipulated. Some of the EEOC charges also included claims unrelated to the promotion process—for instance, age-discrimination and hostile-work-environment claims.

---

[2] The plaintiffs initially asserted a complex and interlocking hierarchy of claims. Counts I through III pertained to the police officers, Counts IV and V pertained to the firefighters, and Count VI pertained to both. The counts varied according to the conduct alleged and the source of law invoked, although many of the factual allegations are repetitive and overlapping. In addition to the equal-protection claims under § 1983 and the discrimination claims under Title VII, the amended complaint also alleged claims under 42 U.S.C. § 1981, the Indiana Constitution, and a vague claim relating to the police department's pension plan. The plaintiffs have abandoned all but the disparate-impact and disparate-treatment claims under Title VII and the disparate-treatment claims under § 1983; the latter are essentially redundant of the Title VII disparate-treatment claims. The Greater Indianapolis Chapter of the NAACP was originally listed as a plaintiff but was dismissed for lack of standing early in the case; there is no challenge to that decision. Finally, the suit also named Indianapolis Mayor Gregory A. Ballard and Police Chief Michael T. Spears as defendants in their individual capacities. The claims against them were also dismissed, and there is no challenge to that decision on appeal.

On August 10, 2009, the plaintiffs moved for leave to amend their complaint and tendered a proposed amended complaint. On October 1 the defendants moved for partial judgment on the pleadings; although the district court had not yet accepted the amended complaint, the motion was addressed to that pleading. On November 2 the district court granted leave to amend, accepted the amended complaint, and set a deadline of November 15 for the plaintiffs to respond to the motion for partial judgment on the pleadings. The parties then jointly submitted a case-management plan, which was approved and entered as a scheduling order on November 10. The order set a deadline of March 3, 2010, for any further motions to amend the pleadings. Fact discovery on liability issues was set to conclude by September 3, 2010, and the deadline for dispositive motions was October 3, 2010.

The district court did not rule on the motion for partial judgment on the pleadings until September 16, 2010. The court granted most of the relief sought, dismissing many of the claims. As relevant here, the court dismissed the disparate-impact claims, reasoning that the plaintiffs failed to exhaust administrative remedies and failed to state a claim because neither their EEOC charges nor their amended complaint included allegations that a "specific neutral employment practice" caused a disparate impact on black officers and firefighters.[3]

---

[3] The court also dismissed the disparate-impact claims brought under § 1983 because the Supreme Court's equal-protection jurisprudence does not recognize a claim for disparate impact. *See Washington v. Davis*, 426 U.S.

(continued...)

The court also dismissed the Title VII disparate-treatment claims of five of the plaintiffs for failure to exhaust administrative remedies. Four of these plaintiffs—Officers Kimberly Young; Arthur Rowley, Jr.; Kendall Moore, Sr.; and Marta Bell—filed EEOC charges in 2008 challenging promotion decisions made in 2002 and 2006, well beyond the 300-day limitations period generally applicable in Indiana for filing EEOC charges. *See Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994) ( "In … Indiana, a charge must be filed within 300 days of the occurrence of the act … ."). A fifth plaintiff—firefighter Erik Grissom—filed an EEOC charge in 2009 challenging a promotion decision made two years earlier in 2007.[4]

The plaintiffs responded to this litigation setback by asking the court for permission to amend their complaint a second time. On October 12 they filed a motion for leave to amend under Rule 15(a)(2) of the Federal Rules of Civil Procedure and tendered a proposed second amended complaint with the motion. The court declined to permit the amendment because the scheduling order's deadline to amend the pleadings had

---

[3] (...continued)
229, 239 (1976); *Bond v. Atkinson*, 728 F.3d 690, 692–93 (7th Cir. 2013). The plaintiffs prudently do not contest this ruling.

[4] The district court also addressed and dismissed a claim of age discrimination by one officer and a claim of hostile work environment by another. This appears to be an anomaly; the amended complaint contains no hint of these claims. The court appears to have been working from the allegations in the EEOC charges filed by these officers. These allegations are not at issue on appeal.

expired more than six months earlier, on March 3. In the alternative, the court held that amendment was futile because the proposed second amended complaint was materially the same as its predecessor and did not cure the defects in the earlier pleading.

The case then moved forward to summary judgment, and the district court entered judgment in the City's favor on the remaining disparate-treatment claims. Although most of these claims arose from the 2008 testing period, some of the plaintiffs also challenged promotion decisions dating to 2005 and 2006. Because these employment actions fell outside the 300-day period covered by the 2008 EEOC charges, the court held that the claims were time-barred. To the extent that the § 1983 claims also related to this earlier time period, they too were dismissed as untimely; the applicable two-year statute of limitations expired long before the plaintiffs filed their complaint.

The rest of the disparate-treatment claims failed for lack of evidentiary support. The plaintiffs had not attempted to proceed under the direct method of proving intentional discrimination, and they had no evidence that the City's reliance on the objective test scores was pretext for discrimination. The court entered summary judgment in favor of the City and terminated the case. The plaintiffs appealed.

After we heard oral argument, some of the plaintiffs— 20 police officers—filed a second lawsuit contesting two new rounds of promotions made in 2010 and 2011. As before, they alleged that they were passed over in favor of candidates who achieved higher scores in the 2008 testing process. The

allegations in the second suit are almost identical to those in
the first; the plaintiffs claim that the examination process that
produced the 2008 promotion-eligibility list was biased and
had a disparate impact on black officers. The only difference is
that the newly challenged promotion decisions occurred later
and were the subject of new EEOC charges.

The district court dismissed the new complaint on res
judicata grounds. Although the second suit involved a new set
of promotion decisions, the court concluded that it was at
bottom a repetitive attempt to challenge the 2008 examination
process. Because that testing process had been the subject of
the earlier suit, which was resolved against the plaintiffs in a
final judgment, the court held that the new claims were barred.
The plaintiffs appealed this decision as well.[5]

## II. Discussion

The plaintiffs challenge the following rulings: (1) the order
dismissing some of their disparate-treatment claims and all of
their disparate-impact claims on the pleadings; (2) the order
denying leave to amend the complaint a second time; (3) the
summary judgment in favor of the City on the disparate-
treatment claims under Title VII and § 1983; and (4) the order
dismissing the claims in the second suit as barred by
res judicata.

---

[5] A single retaliation claim by one plaintiff remains pending. The district
court entered final judgment dismissing the rest of the case under
Rule 54(b) of the Federal Rules of Civil Procedure, authorizing the appeal.

We review the dismissal of the second complaint de novo. *Harmon v. Gordon*, 712 F.3d 1044, 1054 (7th Cir. 2013). We also review the partial judgment on the pleadings and the summary judgment de novo. *Naficy v. Ill. Dep't. of Human Servs.*, 697 F.3d 504, 509 (7th Cir. 2012) (summary judgment); *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 547 (7th Cir. 2011) (judgment on the pleadings). We review the order denying leave to amend deferentially for abuse of discretion; we will reverse "only if no reasonable person could agree with that decision." *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011) (citation omitted).

## A. Partial Judgment on the Pleadings/Denial of Leave to Amend

The plaintiffs raise several procedural objections to the district judge's ruling on the motion for partial judgment on the pleadings. First, they argue that the judge approached the motion the wrong way, holding them to a pleading standard that was too high. We disagree. A motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations are
accepted as true at the pleading stage, but "allegations in the
form of legal conclusions are insufficient to survive a
Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*,
694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).
"Threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, do not suffice."
*Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are
'merely consistent with' a defendant's liability, it 'stops short
of the line between possibility and plausibility of entitlement
to relief.' " *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal
quotation marks omitted).

The plaintiffs object that the judge cited summary-
judgment opinions in her order granting partial judgment on
the pleadings—a key indicator (or so they claim) that she
required too much of their complaint. But there's nothing
wrong with relying on summary-judgment cases at the
pleading stage to explain the substantive legal standards that
apply to the case, and that's what the judge did here. Even the
Supreme Court in *Twombly*—the seminal pleading-standards
case—looked to an opinion rendered at the summary-
judgment stage to determine the substantive legal standard to
apply at the pleading stage. *See* 550 U.S. at 553 (citing *Theatre
Enters., Inc. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 540
(1954)).

The plaintiffs insist that by relying on summary-judgment
cases, the district court effectively required them to plead a
prima facie case in their complaint. This argument is a

nonstarter. A complaint must allege facts to support a cause of action's basic elements; the plaintiff is required to do at least that much. Maybe the plaintiffs are saying that the judge implicitly required them to identify *evidence* in support of a prima facie case at the pleading stage. If that's the argument, then the plaintiffs have simply misread the district court's decision. We see no indication that the judge mistakenly required the plaintiffs to identify evidence in order to over-come the motion for partial judgment on the pleadings.

The plaintiffs also argue that defense counsel's conduct during discovery suggests that the defendants had figured out the factual and legal issues and thus were on adequate notice of the claims in the case. This argument completely misunder-stands the concept of "notice" pleading. The defendant's subjective notice is not the governing standard. Rule 8 specifies what is required in the complaint: "A pleading that states a claim for relief must contain: … (2) a short and plain statement of the claim showing that the pleader is entitled to relief … ." FED. R. CIV. P. 8(a). "Notice" is not mentioned. Nor does the plausibility standard established in *Twombly* and *Iqbal* turn on the defendant's subjective notice of the claims.

It is of course true that many pleading-standards cases both before and after *Twombly* and *Iqbal* refer to "notice," *see, e.g.*, *Brooks v. Ross*, 578 F.3d 574, 578 (7th Cir. 2009), but the point is that it is *necessary* to give the defendants notice of the claims against them, not that giving the defendants notice is *sufficient* to state a claim. By emphasizing a plausibility requirement, *Twombly* and *Iqbal* obviously require more than mere notice. When ruling on a motion to dismiss, the court must review the

complaint to determine whether it contains "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support liability for the wrongdoing alleged. *Twombly*, 550 U.S. at 556; *see also Brooks*, 578 F.3d at 581. An inadequate complaint will not survive a motion to dismiss simply because the defendants managed to figure out the basic factual or legal grounds for the claims.

The plaintiffs next contend that the motion for judgment on the pleadings should have been converted to a motion for summary judgment because the defendants submitted some of the EEOC charges filed by the plaintiffs. This argument is frivolous. The plaintiffs themselves referred to the EEOC charges in their complaint. The defendants were free to attach the written EEOC charges to a motion to dismiss had they filed one; it was likewise fair game for them to attach the written charges to their answer and then move for partial judgment on the pleadings. " '[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.' " *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)). The EEOC charges were deemed incorporated into the plaintiffs' pleadings, and the court could consider them without converting the motion on the pleadings into a motion for summary judgment. *Id.*

On the merits the plaintiffs argue that the court wrongly dismissed some of the Title VII disparate-treatment claims as

time-barred.[6] Invoking the "continuing violation" doctrine, they claim a right to challenge promotion decisions that took place in 2002, 2006, and 2007, well outside the 300-day time period covered by the relevant EEOC charges. This argument is foreclosed by the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

A Title VII plaintiff normally must first file a charge with the EEOC within a specified period of time after the challenged employment action occurs. The applicable limitations period for filing a charge varies depending on whether the state in question has an agency empowered to address employment discrimination. Indiana has such an agency, so the applicable limitations period is 300 days.[7] The limitations period in

---

[6] As we have explained, the district court actually ruled on the timeliness question in two stages, dismissing a handful of the disparate-treatment claims on the pleadings and a few more on summary judgment.

[7] This is an oversimplification; the statute and regulations are a bit more complex. In states that lack an agency empowered to address employment discrimination, a putative Title VII plaintiff must file a charge with the EEOC within 180 days of the alleged violation. *See* 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13(a)(1); *see generally EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 110 (1988) (discussing Title VII's limitations scheme). In states that have an employment-discrimination agency, the plaintiff must file a charge with the state agency first and allow it 60 days to investigate before going to the EEOC. *See* 42 U.S.C. § 2000e-5(c); 29 C.F.R. § 1601.13(a)(3)(ii). In these states the limitations period is lengthened to 300 days or 30 days after the state agency terminates its investigation, whichever is earlier. *See* 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. § 1601.13(b). Additional rules apply if the plaintiff files in the wrong place. *See* 29 C.F.R. § 1601.13(a)(4)(i), (ii). These intricacies are not relevant here.

Title VII begins to run when "the alleged unlawful employ-ment practice occurred." 42 U.S.C. § 2000e-5(e)(1). The statute defines when the alleged unlawful employment practice occurs for violations involving seniority systems and compensation, *id.* § 2000e-5(e)(2), (3), but the clock-starting rules for other types of claims have been left to the courts.

In *Morgan* the Supreme Court explained that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlaw-ful employment practice' " for purposes of the limitations period for filing EEOC charges. 536 U.S. at 114. The Court held that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113. Further, and importantly here, "[d]iscrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to iden-tify." *Id.* at 114 (emphasis added). The Court distinguished claims involving discrete acts of discrimination from claims alleging a hostile work environment: "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115. Thus, a hostile-work-environment charge is timely as long as "*any* act falls within the statutory time period," even if the charge encom-passes events occurring prior to the statutory time period. *Id.* at 120 (emphasis added).

But this reasoning applies to hostile-work-environment claims only. A Title VII plaintiff seeking redress for a series of discrete discriminatory acts cannot avoid the effect of the limitations period by arguing that the discrete acts are "plausibly or sufficiently related." *Id.* at 111–14. To the

contrary, *Morgan* holds that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. The Court reaffirmed this understanding in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007), *superseded by statute with respect to compensation practices*, Pub. L. No. 111-2, 123 Stat. 5 (codified at 42 U.S.C. § 2000e-5(e)).

The employment actions challenged here fall squarely within the Supreme Court's list of "discrete acts"—they are "failures to promote." *Morgan*, 536 U.S. at 114; *see also Pruitt v. Chicago*, 472 F.3d 925, 927 (7th Cir. 2006) ("Claims about discrete employment actions, such as failure to promote, must be made within 300 days under Title VII … ."). Accordingly, to the extent that some of the Title VII disparate-treatment claims arose out of promotion decisions made in 2002, 2006, and 2007, the district court quite properly dismissed them as time-barred.

The district court also properly dismissed disparate-impact claims under Title VII, although its reasoning was not quite correct. Title VII's remedy for employment practices that cause disparate impact complements the more commonly invoked remedy for intentional discrimination, generally referred to as a "disparate treatment" claim. The disparate-impact provision in the statute states, in pertinent part:

**(k) Burden of proof in disparate impact cases**

**(1)(A)** An unlawful employment practice based on disparate impact is established under this subchapter only if—

> **(i)** *a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race,* color, religion, sex, or national origin *and the respondent fails to demonstrate that the challenged practice is job-related for the position in question and consistent with business necessity;*
>
> …
>
> **(B)(i)** With respect to demonstrating that a particular employment practice causes a disparate impact as described in subparagraph (A)(i), the complaining party shall demonstrate that each particular challenged employment practice causes a disparate impact, except that if the complaining party can demonstrate to the court that the elements of a respondent's decisionmaking process are not capable of separation for analysis, the decisionmaking process may be analyzed as one employment practice.

42 U.S.C. § 2000e-2(k) (emphases added).

If a Title VII plaintiff can show that his employer intentionally refused to promote him on account of his race, he has a disparate-treatment claim and the employer's assertion of business justification is irrelevant. In contrast, a disparate-impact claim does not require proof of intentional discrimination, but the employer may defeat the claim by showing that the challenged employment practice is job-related and consistent with business necessity. Here, the City persuaded the

district court that in order to exhaust and state a disparate-impact claim, the plaintiffs needed to allege in their EEOC charges and again in their complaint that a "neutral employment policy" caused a disparate impact on black candidates for promotion.

Applying this requirement, the court held that the EEOC charges failed to raise claims of disparate impact (meaning that the plaintiffs failed to exhaust administrative remedies) and that the amended complaint likewise failed to state a disparate-impact claim. The EEOC charges and the amended complaint clearly alleged that the City's promotion process was intentionally discriminatory; these allegations were plainly sufficient to raise disparate-treatment claims. But the court concluded that the allegations of intentional discrimination defeated any claim that the promotion process was facially neutral but had caused a disparate impact.

The legal premise of the court's ruling was wrong. Disparate-impact claims may be based on any employment policy, not just a facially neutral policy. The Supreme Court addressed this point in *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977 (1988). There, an employer put an employee through subjective performance reviews and denied him a promotion. One of the reviewers had made racist comments, so there was a hint that the reviews were not only subjective but also were infected with racial bias and perhaps were intentionally discriminatory. *Id.* at 990. The fair implication of the plaintiff's complaint was that the subjective reviews allowed racial bias to affect the employment decisions. The lower courts in *Fort Worth* had held that "subjective practices"

could only be challenged in a disparate-*treatment* claim, not a disparate-*impact* claim.

The Supreme Court reversed, holding "that subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." *Id.* at 991. The Court explained that there may be situations in which an employer lacks affirmative discriminatory intent but "subconscious stereotypes and prejudices would remain," which was "a lingering form of the problem that Title VII was enacted to combat." *Id.* at 990. The Court recognized that an employment policy or practice may fall short of being intentionally discriminatory but nonetheless be tainted by bias; the presence of subjective bias does not remove the policy or practice from the ambit of disparate-impact theory. *Id.* at 990–91. *Watson* shows that any employment practice, not just facially neutral practices, may be the subject of a disparate-impact claim.

*Watson* was decided before Congress amended Title VII in 1991 to codify disparate-impact theory, but it comports with the modern text of the statute, which we have quoted above. The word "neutral" does not appear anywhere in the text. We have recognized the continued force of *Watson* in a case decided after the 1991 amendments to Title VII. *See Vitug v. Mulitstate Tax Comm'n*, 88 F.3d 506, 513 (7th Cir. 1996) ("The disparate impact theory of Title VII liability may be utilized to challenge both objective and, as here, subjective selection processes.").

The City relies on a handful of disparate-impact opinions that use the phrase "facially neutral employment practice," but these statements are merely descriptive or illustrative, not

prescriptive. For example, in *Wards Cove Packing Co. v. Atonio*, the Supreme Court said that "a facially neutral employment practice may be deemed violative of Title VII without evidence of the employer's subjective intent to discriminate that is required in a 'disparate-treatment' case." 490 U.S. 642, 645–46 (1989). The Court was explaining how a disparate-impact claim works, not promulgating a required element of the claim. Nothing in the case depended on whether the challenged policy was facially neutral.

The City also relies on this statement from our decision in *Bennett v. Roberts*: "A disparate impact claim exists when an employer has adopted a particular employment practice that, although *neutral on its face*, disproportionally and negatively impacts members of one of Title VII's protected classes." 295 F.3d 687, 698 (7th Cir. 2002) (emphasis added). Nothing in this statement limits disparate-impact claims to facially neutral policies. Rather, this passage from *Bennett* simply explains that facial neutrality is not a defense in a disparate-impact claim.

Finally, the City relies heavily on two Fifth Circuit cases, but it reads them for much more than they're worth. In *Pacheco v. Mineta*, the Fifth Circuit held that the plaintiffs had not exhausted administrative remedies for their disparate-impact claims because their EEOC charges were so indefinite that they " 'd[id] not even suggest claims under a disparate impact theory.' " 448 F.3d 783, 792 (5th Cir. 2006) (quoting lower court). In so holding the court observed that "[a] neutral employment policy is the cornerstone of any EEO disparate-impact investigation, since the EEO must evaluate both the policy's effects on protected classes and any business

justifications for the policy." *Id.* In *McClain v. Lufkin Industries, Inc.*, the Fifth Circuit again dismissed a disparate-impact claim for failure to exhaust administrative remedies, quoting *Pacheco*'s "cornerstone" remark. 519 F.3d 264, 274 (5th Cir. 2008). Both *Pacheco* and *McClain* involved extremely vague EEOC charges that did not suggest disparate-impact claims at all. They have no bearing on cases like this one, where it's clear from the content of the employees' EEOC charges that they were complaining about disparate treatment *and* disparate impact. More fundamentally, the Fifth Circuit's "cornerstone" language was descriptive only; it does not support the proposition that disparate-impact claims are limited to facially neutral employment practices.

Having said that, we agree that the amended complaint fails to state plausible claims for disparate impact, though we've identified a different set of flaws and gaps in the allegations than the district court did. The plaintiffs' EEOC charges were adequate to exhaust administrative remedies, but the amended complaint must satisfy the *Twombly*/*Iqbal* plausibility standard. For all its heft, the amended complaint alludes to disparate impact in wholly conclusory terms. In several places the complaint uses the words "disproportionate" and "impermissible impact" and other synonyms, but those are bare legal conclusions, not facts. We reiterate that "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Moreover, "[t]his is a complex discrimination claim, and we have observed that under *Iqbal* and *Twombly*, '[t]he required level of factual specificity rises with the complexity of the claim.' "

*McReynolds*, 694 F.3d at 887 (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011)).

In a complex disparate-impact case like this one, we would expect to see some factual content in the complaint tending to show that the City's testing process, or some particular part of it, caused a relevant and statistically significant disparity between black and white applicants for promotion. The amended complaint contains no factual allegations of this sort. We are told that the promotion-testing process during this period had several component parts, but the plaintiffs do not identify which part they are attacking. Perhaps they could try to demonstrate that the different elements of the testing process are not capable of separation for analysis, *see* 42 U.S.C. § 2000e-2(k)(1)(B)(i); this flaw alone might not be fatal. The far more serious problem is the complete lack of factual content directed at disparate-impact liability. There are no allegations about the number of applicants and the racial makeup of the applicant pool as compared to the candidates promoted or as compared to the police or fire department as a whole. There are no allegations about the racial makeup of the relevant workforce in the Indianapolis metropolitan area or the supervisory ranks in the police and fire departments. There are no factual allegations tending to show a causal link between the challenged testing protocols and a statistically significant racial imbalance in the ranks of sergeant, lieutenant, or captain in the police department or battalion chief, lieutenant, or captain in the fire department.

Disparate-impact plaintiffs are permitted to rely on a variety of statistical methods and comparisons to support their

claims. At the pleading stage, some basic allegations of this sort will suffice. But the amended complaint contains no allegations of the kind, nor any other factual material to move the disparate-impact claims over the plausibility threshold. Accordingly, these claims were properly dismissed on the pleadings.

We also conclude that the district court did not abuse its discretion in denying the plaintiffs' second motion for leave to amend the complaint. The court denied the motion primarily because it was untimely; the deadline to amend the pleadings had expired six months earlier. We have previously noted that when a motion for leave to amend is filed after the deadline for amending the pleadings has elapsed, the generous standard in Rule 15(a)(2) for allowing amendments "is in some tension with" Rule 16(b)(4), which governs scheduling orders and requires a showing of good cause to justify modifying time limits. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 719 (7th Cir. 2011). In this situation, the district court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Id.*; *see also* FED. R. CIV. P. 6(b)(1)(B) (requiring a showing of "good cause" and "excusable neglect" to extend a deadline after it expires).

Here, the district judge did not formally proceed in this two-step fashion, but she effectively concluded that the plaintiffs had not demonstrated good cause for relief from the deadline set in the scheduling order. That was a reasonable conclusion. When the parties submitted their proposed schedule on November 3, 2009, the defendants had already

moved for partial judgment on the pleadings. The plaintiffs had not yet filed their response brief, and the agreed deadline to amend the pleadings was about four months away. So the schedule was aggressive, but the plaintiffs consented to it. As the March deadline to amend the pleadings approached and the motion for partial judgment on the pleadings remained unresolved, the plaintiffs could and should have moved for an extension if they wished to preserve the opportunity for further amendments after the court rendered its decision. They did not do so. Nor did they, as far as we can tell, bring the approaching deadline to the judge's attention. In similar cases we have upheld a district court's exercise of discretion not to excuse a missed deadline. *See Alioto*, 651 F.3d at 720–21; *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 463–64 (7th Cir. 2005).

The plaintiffs rely on cases applying the general standard in Rule 15(a)(2)—that motions for leave to amend should be freely granted—and holding that one opportunity to replead ordinarily should be allowed. *See, e.g., Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010). That line of cases does not apply here. The plaintiffs had an opportunity to amend their complaint once. This was their second motion, and the deadline for further amendments had long since expired. The district court did not abuse its discretion in refusing to grant relief from the lapsed deadline.

Alternatively, the court denied the motion as futile because the proposed second amended complaint did not correct the deficiencies in the first. We review this aspect of the district court's decision de novo; " '[t]here is no practical difference, in

terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.' " *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 607 (7th Cir. 2013) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). The proposed second amended complaint was longer than the first, but the disparate-impact claims were again pleaded in wholly conclusory terms. The new iteration of the complaint, like its predecessor, failed to move the disparate-impact claims across the plausibility threshold, for the reasons we have explained. So although our reasoning differs from the district court's, we agree that the amendment was futile. Our conclusion in this regard is reinforced by the yawning gap in the plaintiffs' case at summary judgment, and we turn to that issue now.

**B. Summary Judgment on the Disparate-Treatment Claims**

The City moved for summary judgment on the remaining disparate-treatment claims. This required the plaintiffs to do one of two things: come forward with sufficient direct or circumstantial evidence that the City's promotion decisions were intentionally discriminatory or make an indirect case of discrimination under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The plaintiffs proceeded solely under the indirect method of proof. In a failure-to-promote case like this one, the indirect method requires the plaintiff to show that (1) he belonged to a protected class; (2) he applied and was qualified for the position sought; (3) he was rejected for that position; and (4) the employer awarded the promotion to someone outside

the protected class who was not better qualified. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008). If the plaintiff makes this prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. If the defendant does so, the burden shifts back to the plaintiff, who must present evidence that the stated reason is pretext for discrimination. *Id.*

The parties agree that the first three elements of a prima facie case are established here. The City disputes the fourth element because the challenged promotions were awarded to candidates who achieved higher composite scores in the 2007 and 2008 testing periods and thus were better qualified than the plaintiffs. The district judge was willing to assume that the plaintiffs met their burden on this element and moved directly to the next step in the analysis. The City had a legitimate, nondiscriminatory reason for its promotional decisions: It selected candidates for promotion based on their test scores. The plaintiffs produced no evidence of pretext, so the court entered judgment for the City.

As is often the case, here the fourth element of the plaintiffs' prima facie case merges with the question of pretext. The candidates who won the promotions were better qualified because they had higher test scores, and the plaintiffs have not come forward with any evidence to undermine the test scores as a legitimate, nondiscriminatory means of evaluating candidates for promotion. In other words, the plaintiffs have not produced any evidence that the testing process was pretext for discrimination.

The plaintiffs make no effort to challenge this analysis on appeal. Even now, they do not identify *any* evidence tending to show that the City's use of the challenged testing procedure was pretextual. They argue instead that they can sustain their burden on their prima facie case by showing that the City knew that its promotion process caused a disparate impact but nonetheless continued to use it. There are several problems with this argument; the main one is that it is utterly devoid of evidentiary support. The plaintiffs produced no evidence showing that the promotion tests administered in 2007 and 2008 caused a statistically significant disparate impact on black candidates for promotion in the police and fire departments. Accordingly, the City was entitled to summary judgment on the disparate-treatment claims.

### C. The Second Lawsuit/Res Judicata

The district court dismissed the second lawsuit as barred by res judicata in light of the final judgment entered in the first suit. The court was right to do so. "The preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). The doctrine of res judicata "promotes predictability in the judicial process, preserves the limited resources of the judiciary, and protects litigants from the expense and disruption of being haled into court repeatedly." *Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011). In federal court, res judicata—or claim preclusion—has three elements: (1) an identity of the parties or their privies in the first and second lawsuits; (2) an identity of the cause of action; and (3) a final judgment on the merits in the

first suit. *Matrix IV*, 649 F.3d at 547. Whether there is an identity of the cause of action depends on "whether the claims comprise the same core of operative facts that give rise to a remedy." *Id.* (internal quotation marks omitted) (alteration omitted).

A narrower preclusion doctrine—"collateral estoppel" or "issue preclusion"—applies to prevent relitigation of issues resolved in an earlier suit. *Taylor*, 553 U.S. at 892; *Matrix IV*, 649 F.3d at 547. Issue preclusion has the following elements: (1) the issue sought to be precluded is the same as an issue in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *Matrix IV*, 649 F.3d at 547.

Here, the second lawsuit meets all the elements of claim preclusion. The parties are the same and the first lawsuit was resolved in a final judgment. Whether the causes of action in the two suits arise from the same core of operative facts is a closer question, but we conclude that they do. The second suit concerns decisions made in later promotion cycles—in 2010 and 2011—but in every other material respect, the complaint is almost identical to the amended complaint in the first suit. The promotions were made based on the 2008 promotion-eligibility list, and the plaintiffs allege that the 2008 testing process was biased and had a disparate impact on black candidates. So although the challenged promotion decisions occurred at different times, the second suit raises the same core of factual allegations as the first.

Even if claim preclusion does not apply, *issue preclusion* certainly does, and that's enough to sustain the dismissal of the second suit. The 2007 and 2008 testing protocols were the central subject matter of the earlier suit.[8] Whether the tests were intentionally discriminatory or had a disparate impact was actually litigated and essential to the final judgment. The plaintiffs in the second suit were fully represented in the first—and by the same attorney who appears for them in the second round of litigation. They cannot now relitigate issues that were decided against them in the earlier litigation. The second suit was properly dismissed on preclusion grounds.

AFFIRMED.

---

[8] The City's use of the 2007 and 2008 test results to make promotion decisions in 2010 and 2011 was cognizable under Title VII's disparate-impact provision, and the plaintiffs' later challenge to those decisions appears to be timely. *See Lewis v. City of Chicago*, 560 U.S. 205, 214–16 (2010). *Lewis* does not address preclusion doctrine.