NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued October 3, 2017
Decided December 11, 2017

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1097

| | |
|---|---|
| GORDIE TAYLOR, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 14 CV 1402 |
| VILLAGE OF DOLTON, ILLINOIS, et al., | |
|     *Defendants-Appellees*. | Manish S. Shah, |
| | *Judge*. |

**O R D E R**

Gordie Taylor, a black firefighter formerly with the Dolton Fire Department, asserts claims under Title VII for discriminatory discharge and hostile work environment against the Village of Dolton and several of his former supervisors. The district court granted the defendants' motion for summary judgment. Because the record shows a material factual dispute on Taylor's discriminatory-discharge claim, we affirm in part and vacate in part.

Taylor claims that he was subjected to racially offensive language when he worked at the Dolton Fire Department between 2009 and 2013. Two lieutenants in particular, David DuVall and Daniel Manning, used racial epithets and made derogatory comments to him about his race. DuVall, for instance, repeatedly used the word "nigger" and disparaged Taylor's wife, who is white. In addition, Taylor claims that on separate occasions the two lieutenants and Fire Chief Terrence Hughes said that black firefighters "don't belong" in the fire station. The last racially offensive comment occurred in early 2012, but Taylor did not file an EEOC charge until February 2013.

During his employment with the fire department, Taylor repeatedly was accused of smelling of alcohol while on duty, though no one saw him drinking on the job. DuVall and another lieutenant, Mike Moreno, were the first to report him. Taylor denied drinking and highlighted DuVall's history of racial harassment, suggesting that DuVall made the accusation because of racial animus. Jerry McCullough, Hughes's predecessor as fire chief, investigated both the drinking allegations and Taylor's complaint of racial harassment, and in the process learned that coworkers previously had reported that Taylor smelled of alcohol.

A similar drinking accusation was later made by another lieutenant, Daniel Manning. Taylor responded to that allegation by asking McCullough to order an alcohol test. McCullough did so, preparing a written order—as required under the collective bargaining agreement with the firefighters' union—directing Taylor to "take a test for alcohol," though without specifying the type of test. Lieutenant Manning then drove Taylor to a nearby hospital for the procedure. Although McCullough's written order did not mention a blood test, McCullough testified that he told the hospital staff, through Manning, to administer one. The defendants also insist that a blood test was required under the union agreement, which instructs that alcohol tests be conducted in a manner that preserves samples for confirmatory testing. Taylor refused the blood test but agreed to take a breathalyzer test, which showed no trace of alcohol in his system. McCullough regarded Taylor's refusal to take the blood test as insubordinate, and he placed Taylor on administrative leave pending further investigation.

Around this time Hughes replaced McCullough as fire chief. Hoping to impose discipline short of firing Taylor, Hughes offered him a brief three-day suspension. Taylor refused to accept this discipline, however, so Hughes fired him, citing "insubordinate and threatening behavior." The following month, Taylor filed a complaint with the EEOC.

Taylor thereafter filed this suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. He alleged that he was subjected to a racially hostile work environment and fired because of his race. The district judge entered summary judgment for the defendants. Regarding the discriminatory-discharge claim, the judge acknowledged Taylor's assertion that Hughes had made racist comments, but concluded that they were too remote in time from the termination decision to suggest discrimination. The judge held that the hostile-work-environment claim was untimely because the racial harassment occurred more than 300 days before Taylor filed his EEOC charge.

Taylor moved for reconsideration, citing *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764–66 (7th Cir. 2016). He argued that the district court improperly "compartmentalized" and "segmented" the evidence rather than evaluating it "as a whole." The judge denied the motion, concluding that Taylor's evidence of an "atmosphere of racism" in the department was insufficient to raise a material dispute about causation. The judge also reaffirmed his prior conclusion that Taylor's hostile-environment claim was untimely.

On appeal Taylor maintains that the district court's compartmentalized review of the evidence obscured the link between racism at the fire department and his discharge. If the evidence were viewed holistically, he argues, a reasonable fact finder could conclude that he was fired based on his race rather than insubordination, as the defendants contend.

In reviewing a district court's grant of summary judgment, we assess the record de novo and reach our own conclusions based on the record before us. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000). Summary judgment is appropriate only if the moving party shows that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Regarding the discriminatory-discharge claim, we must determine "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge." *Ortiz*, 834 F.3d at 765; *see McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017). The record is considered as a whole, and "no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'" *Ortiz*, 834 F.3d at 765.

The dispute about whether Taylor was insubordinate encompasses genuine issues of material fact that go to the heart of his discriminatory-discharge claim. The

defendants maintain that Taylor was fired because he disobeyed McCullough's order to submit to a blood test. They argue that even if McCullough's order did not specify that the hospital administer a blood test, Taylor's refusal was insubordinate because he knew that a blood test was required under the collective bargaining agreement. On the other hand, Taylor has presented evidence challenging the insubordination reason as pretextual. *Coleman v. Donahoe*, 667 F.3d 835, 852–53 (7th Cir. 2012) (remanding where the plaintiff identified weaknesses, implausibilities, inconsistencies, and contradictions in the employer's explanation for the discharge). He points out that McCullough's written order required only "a test for alcohol." The breathalyzer test, which he did complete, presumably satisfies this requirement. And the collective bargaining agreement does not specify any particular method for a substance-abuse test. These disputes, if resolved in Taylor's favor, could convince a jury that the insubordination rationale was pretext for discrimination, especially if the jury also believes his assertion that Hughes earlier made negative comments about blacks in the fire department.

Taylor also challenges the district court's finding that his hostile-environment claim is untimely. Even though the last racial comments occurred more than 300 days before he filed his EEOC charge, Taylor argues that he suffered from a "covert campaign" of race-based hostility—composed of false accusations from DuVall, Manning, and Hughes that he was insubordinate and drank on the job—that continued into the 300-day period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014).

But Taylor did not present evidence from which it could be inferred that he suffered any overt *or* covert racial harassment within the 300-day period preceding his EEOC charge. The accusations about drinking on the job have no racial component. Taylor cannot point to any conduct within the limitations period that has an "explicitly racial dimension," let alone harassment that has a racial "character or purpose." *Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011).

We accordingly VACATE the order granting the defendants' summary-judgment motion on the discriminatory-discharge claim and REMAND for further proceedings. We AFFIRM the order dismissing the hostile-environment claim as untimely.

ROVNER, *Circuit Judge*, concurring in part and dissenting in part. I concur in the majority's determination that there are genuine issues of material fact which preclude summary judgment on Taylor's wrongful termination claim, and I agree that it should be remanded for a trial on the merits. But I would conclude that Taylor also presented sufficient evidence to overcome summary judgment on his hostile environment claim, and I would remand that claim for a trial on the merits as well.

The majority finds that Taylor's hostile environment claim is time-barred because the last race-based comments occurred more than 300 days before he filed his EEOC charge. *See* 42 U.S.C. § 2000e–5(e)(1). "A charge alleging a hostile work environment claim, however, will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). Taylor asserts that, although overt racial hostility ceased more than 300 days before he filed his EEOC charge, the harassment continued under covert means into the 300-day period.

The overt racial harassment that occurred prior to the 300-day period was perpetrated by the same persons who engaged in covert harassment within the 300-day period. Specifically, for the time period outside the 300-day range, Taylor presented evidence that DuVall used the word "nigger" approximately twenty times in his presence, called him a "spook," and suggested that Taylor's father-in-law must want to shoot himself because his daughter married a black man. DuVall also told several black firefighters that they did not belong in the fire department and would eventually be eradicated. Manning also employed racial slurs, calling Taylor a "moon cricket" and telling Taylor and other black firefighters that they did not have the right skin color to work in the department.

Within the 300-day period, Manning and DuVall falsely accused Taylor of drinking on the job and insubordination, spurious accusations that could easily lead to termination for a firefighter, a job that requires sobriety and conformance to the chain of command. The majority concludes that the accusations about drinking on the job lacked a "racial component." The majority also asserts that Taylor cited no conduct within the 300-day period that had a racial character or purpose. I disagree.

When supervisors have referred to the plaintiff as a "nigger," a "spook" and a "moon cricket," when they have told the plaintiff that black firefighters have no business being there and should be eradicated from the department, their ensuing false accusations of alcohol abuse and insubordination have an obvious racial character or

purpose: to remove Taylor from the department on the basis of race. "[F]orms of harassment that might seem neutral in terms of race (or sex or other protected status) can contribute to a hostile work environment claim if other evidence supports a reasonable inference tying the harassment to the plaintiff's protected status." *Cole v. Board of Trustees of N. Ill. Univ.*, 838 F.3d 888, 896 (7th Cir. 2016). *See also Vance v. Ball State Univ.*, 646 F.3d 461, 470 (7th Cir. 2011) ("Although a plaintiff does not need to identify an explicitly racial dimension of the challenged conduct to sustain a Title VII claim, she must be able to attribute a racial 'character or purpose' to it."). On summary judgment, a reasonable jury could infer that men who had openly expressed racial animus and a desire to rid the department of African-American employees had not changed their minds in the intervening year but had simply changed their tactics in attempting to force the plaintiff out of his job. The seemingly race-neutral charges of drinking on the job and insubordination had the racial purpose of eradicating from the department a man that Manning and DuVall believed had the wrong skin color. These acts are all "part of the same unlawful employment practice," and they bring Taylor's claim for a hostile environment within the 300-day period. *Morgan*, 536 U.S. at 122. *See also Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (a hostile work environment claim is timely so long as any act falls within the statutory time period, even if the claim encompasses events occurring prior to the statutory time period). I would reverse the district court's grant of summary judgment in favor of the defendants on the hostile environment claim and remand for a trial on the merits. I therefore respectfully dissent from that part of the majority's order affirming the judgment on the hostile environment claim.