In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1461

JANE DOE,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF ARLINGTON HEIGHTS, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:11-cv-02764 — **Edmond E. Chang**, *Judge.*

ARGUED OCTOBER 1, 2014 — DECIDED APRIL 13, 2015

Before WOOD, *Chief Judge*, and RIPPLE and TINDER, *Circuit Judges*.

TINDER, *Circuit Judge*. Jane Doe sued police officer Mark Del Boccio and his employer, the Village of Arlington Heights ("Arlington Heights" or the "Village"), alleging claims arising out of Del Boccio's response to a 911 call when he encountered Doe and three males in an apparently intoxicated state. Del Boccio left Doe with the males and she was then sexually assaulted. The district court dismissed all

claims, denied leave to amend the complaint, and denied Doe's motion to alter or amend its judgment. We affirm.

### I.    The Complaint's Allegations

Jane Doe, a minor female, was drinking alcohol with a group of teenagers on the premises of an apartment complex located in both Arlington Heights and Mount Prospect, Illinois. A site manager assigned to the apartment complex observed the group smoking and drinking near the complex's dumpster and called 911 to report them. Shortly after calling 911, the manager saw part of the group leave; Doe and three males remained and drank straight from a vodka bottle. Doe became intoxicated and the three males began moving her to a secluded area. Two of them had to hold her up because she was so intoxicated.

Arlington Heights Police Officer Mark Del Boccio arrived on the scene. At the time, one of the males, Christopher Balodimas, was holding Doe up from behind because she could not stand up by herself. In addition, her head was down and her eyes were closed, all because of her intoxication. Del Boccio rolled down his window and talked to the three males. Then Del Boccio allowed them to leave the scene with Doe.

The site manager approached Del Boccio and Del Boccio told him that the three males were taking Doe home. The manager told Del Boccio that the group had been drinking straight from a vodka bottle, and Del Boccio responded that the males were taking Doe home. Del Boccio left the scene. He failed to ask Doe or any of the males for identification. Had Del Boccio done so and had he investigated, he would have learned that Balodimas was on probation for armed

robbery and that Doe and the other males were minors. Del Boccio reported to dispatch that he had checked the scene and the subjects of the 911 call were gone on arrival. At some point, although it is unclear exactly when, Del Boccio called off Officer Patrick Spoerry, who had also been dispatched to the scene.

After Del Boccio left the scene, the three males carried Doe into a laundry room in one of the buildings of the apartment complex. When the site manager observed this happening, he again called 911. Mount Prospect police officers responded to the call. When the officers entered the laundry room, they caught Balodimas sexually assaulting Doe. Balodimas and the two other males were arrested.

## II.     The District Court Proceedings

Doe sued Del Boccio and Arlington Heights in Illinois state court. Defendants removed the case to the federal district court in the Northern District of Illinois. The 66–page complaint alleged the following: state law claims of negligence, willful and wanton conduct, and intentional infliction of emotional distress against Del Boccio and the Village (Counts I, II, and III); a claim under 42 U.S.C. § 1983, against Del Boccio (Count IV); a § 1983 municipal liability claim against the Village based on its background check and hiring of Del Boccio (Count V); a § 1983 claim against the Village based on Del Boccio's conduct (Count VI); a § 1983 claim against the Village based on the alleged negligent hiring of Del Boccio (Count VII); and a state-law willful and wanton misconduct in hiring claim against the Village (Count VIII).

Defendants moved to dismiss the complaint for failure to state a claim, contending among other arguments that Del

Boccio was entitled to qualified immunity, there was no constitutional duty to protect Doe, and state law provided the defendants immunity. The district court granted the motion to dismiss.

Doe moved to alter or amend the judgment, seeking to vacate the dismissal of her federal claims and asserting for the first time that she had a class-of-one equal protection claim. According to Doe, she sought to amend her complaint to allege that Del Boccio was a racist who wanted harm to come to her because she was an intoxicated white girl socializing with African-American youths. Doe did not attach a proposed amended complaint to her Federal Rule of Civil Procedure 59(e) motion, but she did assert facts that she argued supported a class-of one claim. In an effort to portray Del Bocchio as a racist in her appellate brief, Doe refers to a tragic incident in 2004 when Del Boccio, while operating an unmarked police car, ran over and killed an eight-year-old boy and seriously injured an eleven-year-old girl and then lied to cover it up. (The children were African American.) She asked the court to vacate its dismissal of her supplemental state-law claims, relinquish jurisdiction over them, and remand them to state court, arguing for the first time that the state claims raised novel and complex issues of state law. The court treated Doe's motion in part as a motion for leave to amend her complaint and denied leave to amend on the basis of futility. The court also denied the motion to alter or amend its judgment.

### III.    Discussion

Doe appeals the district court's judgment of dismissal and its denial of her motion to alter the judgment.[1] She argues that the court erred in dismissing her complaint for failure to state a claim and denying her leave to amend to assert a class-of-one equal protection claim. Doe also argues that the court abused its discretion in exercising jurisdiction over the supplemental state law claims and, alternatively, that it erred in predicting how the Illinois Supreme Court would decide those claims. We review the grant of a motion to dismiss for failure to state a claim *de novo*. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). We review the denial of a motion to alter or amend the judgment for abuse of discretion. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 953 (7th Cir. 2013). A party "establishes an abuse of discretion only when no reasonable person could agree with" the district court's decision. *Id.* (quoting *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 735 (7th Cir. 1999)).

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta*, 761 F.3d at 736 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff

---

[1] Doe fails to mention the two federal claims against Arlington Heights premised on its background check and hiring of Del Boccio (Counts V and VII); she therefore waived any challenge to the district court's dismissal of those claims. *See, e.g.*, *McCoy v. Maytag Corp.*, 495 F.3d 515, 525 (7th Cir. 2007).

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a dismissal for failure to state a claim, we accept all well-pleaded facts as true and view them in a light most favorable to the plaintiff; however, mere conclusory statements are insufficient to survive a motion to dismiss. *Camasta*, 761 F.3d at 736. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twonbly*, 550 U.S. at 557).

The district court decided that Del Boccio was entitled to qualified immunity. Qualified immunity shields a government official from liability for damages when the official's "conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Mordi v. Zeigler*, 770 F.3d 1161, 1163–64 (7th Cir. 2014) (discussing the qualified immunity doctrine). Courts use a two-part test to determine whether officers are entitled to qualified immunity: "(1) whether the facts, viewed in a light most favorable to the injured party, demonstrate that the conduct of the officers violated a constitutional right, and (2) whether that right was clearly established at the time the conduct occurred." *Hardaway*, 734 F.3d at 743 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). A court has discretion to consider either part of the test first. *Pearson*, 555 U.S. at 236.

Doe alleges that Del Boccio violated her constitutional rights by (1) failing to adequately investigate the 911 complaint, and (2) acting to prevent other officers from arriving on the scene, specifically by calling off Officer Spoerry who also had been dispatched, and falsely reporting to dispatch that the subjects of the 911 call were gone on arrival. The defendants argue that no clearly established law put Del Boccio on notice that any of his alleged conduct violated Doe's constitutional rights.

In deciding whether a right is "clearly established," courts ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted*." Saucier v. Katz*, 533 U.S. 194, 202 (2001). A plaintiff bears the burden of establishing that the constitutional right was clearly established. *Volkman v. Ryker*, 736 F.3d 1084, 1090 (7th Cir. 2013). Although the plaintiff need not point to a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011). In other words, "the plaintiff must demonstrate either that a court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right." *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005). Doe has not identified any case factually similar to this one that would have provided a reasonable officer with notice that he had a constitutional duty to protect Doe in the situation that Del Boccio encountered. Nor has she argued that the alleged constitutional violation was obvious. Instead, she argues that the district court misunderstood her theory of liability and misread the complaint. She does not, however, explain how the court erred in

these ways, and no error is apparent to us on reviewing the complaint.

In addition, Doe argues that the district court erred by resolving the qualified immunity defense at the pleading stage. Yet the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Even though dismissal under Rule 12(b)(6) on qualified immunity grounds may be inappropriate in many cases, *see Alvarado v. Litscher*, 267 F.3d 648, 651 (7th Cir. 2001) (noting "that a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds . . . . [b]ecause an immunity defense usually depends on the facts of the case"), in some cases it is proper; indeed, we have reversed the denial of qualified immunity at the pleading stage where appropriate, *see, e.g.*, *Chassensky v. Walker*, 740 F.3d 1088, 1095–97 (7th Cir. 2014) (holding that the plaintiff failed to establish a clearly established right and the district court erred in denying the defendants' motion to dismiss on qualified immunity grounds); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007) (reversing denial of motion to dismiss plaintiff's access-to-the-courts claim because officials were entitled to qualified immunity).

The district court correctly determined that it was not clearly established that calling off another police officer or falsely reporting to dispatch that the scene was clear violates a constitutional right of a victim of private violence. Doe has not shown that it was clearly established that any other conduct or inaction of Del Boccio violated a constitutional right. Even assuming that the complaint alleges that Del Boccio

violated Doe's constitutional right, the law was not clearly established such that he should have known he was violating her rights. Therefore, Del Boccio is entitled to qualified immunity and Count IV against him was properly dismissed. And Count VI against the Village, which was premised only on Del Boccio's conduct and not on an alleged municipal policy or custom, was properly dismissed as well. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory but can be held liable only where a municipality policy or custom causes the injury).

The district court provided an alternative ground for its dismissal of the federal claims: the complaint did not allege a constitutional violation. *DeShaney v. Winnebago County Department of Social Services* holds that, as a rule, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." 489 U.S. 189, 197 (1989). The purpose of the Due Process Clause "was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Thus, due process "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* Doe was assaulted by private, third-party actors. This general rule seemingly defeats her due process claims.

However, there are two exceptions to *DeShaney*'s general rule (1) when the state has a "'special relationship'" with the person such as "when it has custody over a person, it must protect him because no alternate avenues of aid exist," and (2) under the state-created danger exception, "'liability exists

when the state affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'" *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (quoting *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998)); *see also Slade v. Bd. of Sch. Dirs. of Milwaukee*, 702 F.3d 1027, 1030 (7th Cir. 2012) (discussing two exceptions as the "special relationship" and "trap" cases and stating that "[a]ll acts are affirmative, including standing still when one could save a person by warning him of some impending danger"). On appeal, Doe argues only that the state-created danger exception applies.

The state-created danger exception is a narrow one. *Hernandez v. City of Goshen, Ind.*, 324 F.3d 535, 538 (7th Cir. 2003). The exception applies where the state creates or increases a danger to an individual. *See Sandage v. Bd. of Comm'rs*, 548 F.3d 595, 598–99 (7th Cir. 2008) (stating "had it not been for the state's inaction in *DeShaney*, there would have been no injury"); *Paine v. Cason* , 678 F.3d 500, 510 (7th Cir. 2012) ("Several decisions in this and other circuits hold that people propelled into danger by public employees have a good claim under the Constitution."). To "'create or increase' must not be interpreted so broadly as to erase the essential distinction between endangering and failing to protect" and thus circumvent *DeShaney*'s general rule. *Sandage*, 548 F.3d at 599 (citation and emphasis omitted). "When courts speak of the state's 'increasing' the danger of private violence, they mean the state did something that turned a potential danger into an actual one, rather than that it just stood by and did nothing to prevent private violence." *Id.* at 600.

The "cases in which we have either found or suggested that liability attaches under the 'state-created danger' excep-

tion are rare and often egregious." *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1022 (7th Cir. 2003). In *White v. Rochford*, 592 F.2d 381, 382 (7th Cir. 1979), for example, the police arrested a driver for drag racing and left the children passengers stranded alone in the car on a busy highway on a cold night. In *Reed v. Gardner*, 986 F.2d 1122, 1127 (7th Cir. 1993), we concluded that police officers could be held liable under the state-created danger exception where they arrested a sober driver and left behind an obviously drunk passenger with the keys to the vehicle who later caused a collision, injuring the plaintiffs. In *Monfils*, a police officer took responsibility for preventing release of a tape recording of an informant's anonymous tip but then went deer hunting instead of taking standard steps to prevent the tape's release despite knowing that the release would place the informant in heightened danger, and the informant was killed. *Monfils*, 165 F.3d at 520. And recently in *Paine*, the police arrested a woman in a safe place and released her in a hazardous one while she was unable to protect herself. 678 F.3d at 511. In each of these cases, the police encountered a potential danger and turned it into an actual one. And in each of these cases, the plaintiff was safe, or at least considerably safer, before the police acted than he or she was thereafter.

In contrast, for example, in *Windle v. City of Marion*, 321 F.3d 658, 661–62 (7th Cir. 2003), we held that a police officer's failure to intervene to protect a student despite knowledge that she was being sexually molested by a middle school teacher did not increase the danger. For at least two months, police officers intercepted telephone conversations between the student and teacher and learned that the student was being molested by the teacher. *Id.* at 660. The officers had enough information to conduct an investigation

and intervene on the student's behalf, but they did nothing. *Id.* We held that the officers' inaction did not create a danger, nor did they do anything to make the danger to the student worse. *Id.* at 662. We reasoned that "we ha[d] no way of knowing what would have occurred" had the police actually done something, and that "the police might have failed at protecting [the plaintiff]." *Id.* Had the police never been involved, the danger to the plaintiff would have been the same or worse. *Id.* We noted that the plaintiff waived the argument that, and we did not address whether, "a constitutional violation would exist where one member of a law enforcement unit discouraged or prevented another from protecting a victim." *Id.* at 662 n.3.

This case is not sufficiently similar to those cases in which we have applied the state-created danger exception; it is more like *Windle* and cases in which the exception was inapplicable. Del Boccio did not create the danger to Doe, nor did he do anything to make the danger to her worse. When he left Doe with the three young males, he left her just as he found her, "plac[ing] [her] in no worse position than that in which [s]he would have been had [he] not acted at all." *DeShaney*, 489 U.S. at 201. Not even the allegations that Del Boccio called off Officer Spoerry (or falsely reported to dispatch that the subjects were gone) created or increased the danger to Doe. Had Del Boccio had not called off Officer Spoerry or falsely reported to dispatch, we have no way of knowing what would have happened. Officer Spoerry might have failed at protecting Doe. *See Windle*, 321 F.3d at 662.

This contrasts with *Ross v. United States*, 910 F.2d 1422, 1424–25 (7th Cir. 1990), where competent rescuers were on the scene with rescue equipment and ready to begin their

efforts to rescue a drowning boy when the police arrived and ordered them to cease their efforts because county policy prohibited civilian rescue attempts. A sheriff's deputy advised the rescuers that he would arrest them upon their entry into the water and even placed his boat so as to prevent their dive. *Id.* at 1425. About thirty minutes after the boy had fallen into the water, the authorized divers arrived and pulled him out of the water. *Id.* He died the next day. *Id.* We held that plaintiff sufficiently alleged a constitutional injury. *Id.* at 1433–34. Significantly, in *Ross* the chances of a successful rescue were high, and there was a direct connection between the deputy's actions and the boy's drowning. Here, we can only speculate whether Del Boccio made Doe worse off, whether by calling off Officer Spoerry or falsely reporting to dispatch.

This is not a case in which Doe was safe, or even considerably safer, before Del Boccio acted. His alleged conduct did not turn a potential danger into an actual one; Doe was in actual danger already. Therefore, Del Boccio had no constitutional duty to protect her. But even if calling off Officer Spoerry violated Doe's constitutional rights, it was not clearly established and Del Boccio nonetheless would be entitled to qualified immunity.

Doe suggests that discovery would have allowed her to uncover facts to support allegations that the state-created danger exception is applicable. She relies on *Adams v. City of Indianapolis, Ind.*, 742 F.3d 720 (7th Cir.), *cert. denied*, 135 S. Ct. 286 (2014), where we said that "the court must review the complaint to determine whether it contains 'enough fact to raise a reasonable expectation that discovery will reveal evidence' to support liability for the wrongdoing alleged." *Id.* at

729 (quoting *Twombly*, 550 U.S. at 556). Doe chooses to emphasize what she thinks discovery *might* reveal, for example, that Del Boccio made statements to encourage or embolden Balodimas to rape her. Nonetheless, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, "raise a right to relief above the speculative level," *id.*, at 555, and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678. Doe's complaint fails to do so. It contains no allegation, for example, of any statement of encouragement by Del Boccio. *Cf. Dwares v. City of New York*, 985 F.2d 94, 99 (2d Cir. 1993) (holding that complaint alleging officers conspired with skinheads to allow them to beat up others with impunity sufficiently stated a due process claim). Similarly, in asserting the facts in her Rule 59(e) motion that purportedly supported a class-of-one claim, Doe failed to allege that Del Boccio said any words of encouragement to the youths or took any other affirmative action to suggest that he was giving them "a pass" or emboldening them to "have their way" with Doe. Furthermore, the claim that Doe says discovery might support—that Del Boccio encouraged the males to assault her—is not "plausible on its face."

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave may be denied where the amendment would be futile. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). We review the denial of leave to amend for an abuse of discretion, *id.*, and "will reverse 'only if no reasonable person could agree with that decision,'" *Adams*, 742 F.3d at 734 (quoting *Carroll v. Stryker Corp.*, 658 F.3d 675, 684 (7th Cir. 2011) (citation omitted)).

The district court did not abuse its discretion in denying Doe leave to amend her complaint to allege a class-of-one equal protection claim. We have held that, when a plaintiff "did not attach its proposed amended complaint to its motion for reconsideration or take the necessary steps to make its proposed amendment a part of the record on appeal, we cannot meaningfully assess whether its proposed amendment would have cured the deficiencies in the original pleading." *Crestview Vill. Apartments v. U.S. Dep't of Hous. & Urban Dev.*, 383 F.3d 552, 558 (7th Cir. 2004). We have also said that "the failure to tender an amended complaint with a motion to alter judgment may indicate a lack of diligence or good faith." *Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994). Because Doe failed to submit a proposed amended complaint with her Rule 59(e) motion, we are unable to meaningfully evaluate whether the proposed amendment would have cured the deficiencies in the original complaint.

Furthermore, Doe's allegations do not suggest any plausible basis for such a claim. State actions are entitled to a presumption of constitutionality; it is the plaintiff's burden to show that it is plausible that the state actions were "in fact discriminatory." *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887, 913 (7th Cir. 2012) (Wood, J., dissenting). "[T]he complaint must set forth a plausible account of intentional discrimination, which is required for any violation of the Equal Protection Clause." *Id.* Yet Doe alleges nothing to suggest that Del Boccio intentionally treated her differently than he treated others similarly situated, *see, e.g.*, *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014); *Lunini v. Grayeb* 395 F.3d 761, 769–70 (7th Cir. 2005) ("We have previously held that a class of one claim must fail where the plaintiff has failed to identify someone who is similarly situ-

ated but intentionally treated differently than he." (internal quotation marks omitted)), so an amendment would be futile. Thus, with respect to the federal claims based on Del Boccio's conduct, the district court's denial of Doe's motion to alter the judgment, which the court construed as a motion for leave to amend, was not an abuse of discretion. *See McCoy*, 760 F.3d at 684. Moreover, the suggestion that Del Boccio was a racist who wanted Doe raped because she was an intoxicated white female socializing with three African-Americans is not plausible. Del Boccio's conduct in the tragic motor vehicle accident involving two African-American children and his cover-up of it bear no resemblance to his alleged actions in this case. Any suggestion that there is a link between the two events, and that the link is rooted in Del Boccio's racism, is based on rank speculation.

A district court has discretion to decline to exercise supplemental jurisdiction over state law claims arising from the same case or controversy as the federal claims where "the claim raises a novel or complex issue of State law" or "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c). *Bond v. Atkinson*, 728 F.3d 690 (7th Cir. 2013), relied on by Doe, does not state the contrary; it does not say that a district court "must" relinquish jurisdiction when all federal claims are dismissed before trial. Section 1367(c) does not say that either. 28 U.S.C. § 1367(c) ("The district courts *may* decline to exercise supplemental jurisdiction over a claim under subsection …."); *see also Bailey v. City of Chicago*, No. 13-3670, 2015 WL 968832, at *6 (7th Cir. Mar. 6, 2015) ("[Section] 1367(c)(1) states that a district court *may decline* to exercise supplemental jurisdiction where a state law claim raises a novel or complex issue of state law; it does not require a district court to do so.").

We review the decision to exercise supplemental jurisdiction under § 1367(c) for an abuse of discretion. *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 606 (7th Cir. 2008).

The complaint asserted four state law claims. Three are based on Del Boccio's investigation and response to the 911 call and are asserted against both defendants: Count I alleges negligence, Count II alleges willful and wanton conduct, and Count III alleges intentional infliction of emotional distress. The fourth state law claim, Count VIII, is against Arlington Heights only and alleges willful and wanton conduct in failing to adequately investigate Del Boccio's background and in hiring him. "'Wilful and wanton conduct, as contemplated in [the Tort Immunity Act], consists of more than mere inadvertence, incompetence, or unskillfulness.'" *McDowell v. Vill. of Lansing*, 763 F.3d 762, 768 (7th Cir. 2014) (quoting *Geimer v. Chi. Park Dist.*, 650 N.E.2d 585, 592 (Ill. App. 1995) and holding officer and governmental entity enjoyed immunity from state-law claim where officer's actions were not willful or wanton).

The district court did not abuse its discretion in retaining jurisdiction over these claims because their resolution was clear: the claims are barred by the Illinois Tort Immunity Act, 745 ILCS 10/2-101–10-101. *See id.* §§ 2-103 (granting immunity to governmental entities from liability for injury caused by the failure to enforce any law), 2-109 (granting a governmental entity immunity from liability "for injury resulting from an act or omission of its employee where the employee is not liable"), 2-202 ("A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful

and wanton conduct."), 2-204 (providing public employees immunity from liability for injury caused "by the act or omission of another person"), 2-205 (providing public employees immunity from liability for injury caused by the failure to enforce any law), 4-102 (providing immunity to governmental entities and employees from liability caused by the failure to provide police protection, provide adequate police protection, prevent the commission of crimes, detect or solve crimes, or identify and apprehend criminals), and 4-107 (granting governmental entities and employees immunity for injury "caused by the failure to make an arrest or by releasing a person in custody"); *McDowell*, 763 F.3d at 768. There is no willful and wanton exception for provisions of the Act that do not expressly contain such an exception. *See Jane Doe-3 v. McClean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 893 (Ill. 2012) (reiterating that "where a provision of the Tort Immunity Act contains no exception for willful and wanton conduct, we will not read one in"); *Ries v. City of Chicago*, 950 N.E.2d 631, 644 (Ill. 2011) (holding that the willful and wanton exception in § 2-202 does not apply a general willful and wanton exception to the other sections of the Act). Other than § 2-202, none of these sections of the Act contain an exception for willful or wanton conduct.

Doe suggests that the Illinois Supreme Court might determine that Del Boccio owed her a duty of care under the "community caretaking" or "emergency aid" doctrines. Unlike Doe, we do not read in *Jane Doe-3* any inkling that the Illinois Supreme Court would conclude that where a police officer encounters "an intoxicated, falling down drunk fifteen year old girl in the company of three intoxicated teenage males in a dark and isolated parking lot," the state's interest in protecting children would vitiate the immunity the

officer otherwise would have under § 4-102 of the Tort Immunity Act. To be sure, in such a situation a police officer would have a moral duty to take action, and may have state statutory duties to act as well. But Doe points to nothing to suggest that the existence of the duty itself is enough to negate tort immunity. *Doe-3* does not even address § 4-102 immunity.

Doe cites *DeSmet ex rel Estate of Hays v. County of Rock Island*, 848 N.E.2d 1030, 1045 (Ill. 2006), which does address § 4-102, and notes that "there may be additional exceptions to the application of [§] 4-102 where a legislative enactment identifies a specially protected class of individuals to whom statutorily mandated duties are owed." *Id.* at 1045. However, Doe fails to point to any such legislative enactment that applies to someone in the situation in which Del Boccio found her. Furthermore, even if Doe had mounted a successful challenge to § 4-102 immunity based on the public policy of protecting children, that would not be enough because she wholly fails to challenge the district court's decision that numerous other sections of the Tort Immunity Act also provide immunity to the defendants in this case.

Doe argues that the district court erred in holding that her negligent-hiring claim against the Village was barred by § 4-102 of the Tort Immunity Act. She cites *Mueller by Math v. Community Consolidated School Dist. 54*, 678 N.E.2d 660 (Ill. App. Ct. 1997), and *Green v. Carlinville Community Unit School Dist. No. 1*, 887 N.E.2d 451 (Ill. App. Ct. 2008), for support. In *Mueller*, a student and her mother sued a school district and a wrestling coach for injuries arising from the coach's sexual assault of the student. 678 N.E.2d at 662. The defendants argued that the school district had tort immunity

under various sections of the Tort Immunity Act—§§ 2-103, 2-104, 2-109, and 2-201. 678 N.E.2d at 663. The court concluded that the first three sections were inapplicable and then turned its attention to § 2-201, which immunizes governmental entities from liability for injuries caused by the exercise of discretionary authority. *Id.* at 666. A state criminal-background-check statute required that the school district conduct an investigation of job applicants. *Id.* The court concluded that the statute's mandatory language required the school district to begin such an investigation before it was vested with the discretionary authority to hire. *Id.* According to the court, the school district's "failure to comply with the statutorily imposed condition precedent vitiates any immunity it might otherwise have enjoyed under Section 2–201 of the Tort Immunity Act for [its hiring decision]." *Id. Green* agreed with and followed *Mueller*. 887 N.E.2d at 458.

Doe's argument appears confused. First, her negligent-hiring claim was a federal claim, not a state law claim for which the district court found the Village entitled to immunity. Second, neither M*ueller* nor *Green* addressed § 4-102 immunity. And neither case holds that generally a governmental entity lacks immunity under the Act from liability for negligent hiring. Instead, the courts concluded that the school districts' failure to comply with a mandatory state statute invalidated whatever immunity they might have had under § 2-201 of the Act. Doe has not argued that a similar statute applies in the context of police hiring. Moreover, the Illinois state courts have determined that "[t]he decision to hire or not to hire a police officer is an inherently discretionary act and, thus, is subject to the immunities contained in the Immunity Act." *Johnson v. Mers*, 664 N.E.2d 668, 675 (Ill.

App. Ct. 1996). The district court did not abuse its discretion in exercising jurisdiction over the supplemental state law claims and did not err in dismissing them.

## IV.      Conclusion

The district court's judgment is AFFIRMED.