NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 15, 2015[*]
Decided May 15, 2015

**Before**

DIANE P. WOOD, *Chief Judge*

RICHARD D. CUDAHY, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 14-3641

| | |
|---|---|
| STEPHEN JACKSON, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 14 C 3414 |
| VILLAGE OF WESTERN SPRINGS, et al., | |
| *Defendants-Appellees.* | Harry D. Leinenweber, *Judge.* |

## O R D E R

Stephen Jackson, a homeowner in the Village of Western Springs, Illinois, brought this action challenging decisions made over a 14-year period to zone nearby property for commercial use. He sued the Village and more than 20 other defendants—including Village officials, private attorneys, realty professionals, and

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

engineers—claiming violations of the Constitution and state law. The district court dismissed the federal claims on the pleadings and declined to exercise supplemental jurisdiction over the state-law claims. We affirm the judgment.

Because the case was dismissed at the pleading stage, we accept Jackson's factual allegations as true and view them in the light most favorable to Jackson. *See Doe v. Vill. of Arlington Heights*, No. 14-1461, 2015 WL 1621398, *2 (7th Cir. Apr. 13, 2015). In February 2000, Jackson purchased a recently built home in the Village. At the time, the property located directly across the street was zoned for "mixed residential" use, and Jackson believed that a townhome development with 16 units would be built there. But in March 2001, the Board of Trustees for the Village approved a conditional-use permit for a retail center (to be occupied by a gardening store) on the property across the street. Jackson attended public meetings and hired counsel to oppose the commercial development, but, he says in his complaint, the public meetings were "simply intended to provide the illusion of public process" to conceal lucrative insider dealing between Village officials and the developers. Jackson later learned that in late 2000, about nine months after he purchased his property, the developers had received "preliminary approval" from the Village to build the retail center.

Jackson then sued the Village in the Circuit Court of Cook County in March 2001, claiming that the Village, by granting the conditional-use permit, had violated state law, denied him "due process of law and the equal protection of the law," and taken "his property for public use without compensation." Three months later, counsel for the retail developers wrote Jackson asserting that his lawsuit had been brought in bad faith and warning that the developers would ask the state judge to require him to post a $5 million bond to protect their investment in the property. One month later Jackson voluntarily dismissed the suit.

Over the next 13 years, Village officials continued to make zoning decisions affecting the property across the street from Jackson's home. In 2003 the Board amended the Village's Land Use Plan to recognize the now-authorized commercial use of the property (or, in Jackson's words, to bring their "bad acts into compliance"). Then in 2006, the Village entered into a short sale of property adjacent to the retail center for the benefit of the developers. Two years after that, the Village approved modifications to development plans without convening a public meeting. Meanwhile, the gardening store relocated, leaving the retail center vacant for five years. In 2011, after the developers had threated to withhold payment of their property taxes unless given permission to lease the retail center to a different business, the Board adopted an

ordinance approving the use of the space for medical offices, again without observing local procedures. When that enterprise proved unsuccessful, the Board in 2014 authorized a day care to move into the space.

These commercial uses increased the traffic and noise on Jackson's street and reduced his privacy and safety. Based on a single sale of a residential property located farther from the retail center, Jackson estimated that the value of his and his neighbors' properties had decreased by $111.32 per square foot for a total of $2.2 million.

Jackson then resorted again to litigation in 2014, this time in federal district court. He claims that the defendants deprived him of procedural and substantive due process, denied him equal protection, and violated his First Amendment right to free speech. He also claims that the defendants violated the Illinois constitution, Illinois statutes, and committed several torts.

The Village and its officials moved to dismiss for lack of jurisdiction, arguing that the lawsuit was not ripe. Jackson's federal claims, these defendants said, should be dismissed because he never sought compensation from the Illinois courts as required under *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 194–95 (1985). As for the state-law claims, the defendants argued that the district court should decline to exercise supplemental jurisdiction. Three other defendants joined the motion to dismiss, but three more never answered Jackson's complaint.

In opposing the motion to dismiss, Jackson did not assert that he had sought relief through state process. Rather, he argued that he was not required to exhaust state remedies before bringing a takings claim in federal court because it would be futile to seek relief from Village officials who are conspiring against him. And, he argued, his other federal claims were not subject to the exhaustion requirement. Jackson also filed separate motions for a default judgment against each defendant who had not filed an answer.

Before ruling on the motion to dismiss, the district court announced during a hearing that it was "in the process of dismissing the case for lack of federal jurisdiction," and thus Jackson's "motion for default would be moot." The court immediately denied as moot Jackson's motions for default judgment and then, three days later, dismissed his suit. The court concluded that Jackson was required to exhaust his due-process claims because those claims seek essentially the same relief as a takings claim: money damages for the diminished property value attributable to the zoning changes. Likewise, the court explained, Jackson was required to exhaust his

equal-protection claim (which, Jackson says, is premised on a "class of one"). That claim, the court added, does not plausibly allege that the defendants had made their zoning decisions out of spite aimed directly at him.

That left Jackson's claim under the First Amendment, which the district court dismissed on its own initiative. The court characterized this claim as "difficult to decipher" and concluded that the "closest" Jackson comes to alleging a First Amendment violation is his allegation that the developers threatened him in retaliation for filing his state lawsuit. Yet the district court could not fathom how this litigation tactic conceivably violated Jackson's rights. And since Jackson does not otherwise allege that he was denied an opportunity to attend public meetings, disseminate information, or associate with his neighbors, the court reasoned that his complaint does not raise a First Amendment issue. The court then declined to exercise supplemental jurisdiction over Jackson's state-law claims.

On appeal Jackson first argues that the district court misconstrued as a takings claim what really is an allegation that he was denied procedural due process. This due-process claim, says Jackson, asserts that the Village disregarded local procedures and engaged in delay tactics. Yet we have consistently held that applying the label "procedural due process" does not absolve a litigant's obligation to first seek compensation in state court before turning to federal court. *See, e.g., Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000); *River Park, Inc. v. City of Highland Park*, 23 F.3d 164, 167 (7th Cir. 1994). When a plaintiff's claim of a violation of procedural due process asks the federal courts to review the same conduct that resulted in an alleged taking, the "exhaustion requirement applies with full force." *Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 961–62 (7th Cir. 2004); *see Gosnell v. City of Troy, Ill.*, 59 F.3d 654, 658–59 (7th Cir. 1995); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 571–73 (6th Cir. 2008). Jackson's claim that the Village used an unfair process in reaching its zoning decisions is merely ancillary to, and not independent of, his takings claim. Because Jackson did not appeal the Board's decisions to the zoning board of appeals, *see* 65 ILCS 5/11-13-12, and then to the state courts on administrative review, *see* 65 ILCS 5/11-13-13, or pursue other remedies that Illinois has provided for property owners challenging excessive zoning regulation, *see Peters v. Vill. of Clifton*, 498 F.3d 727, 733–34 (7th Cir. 2007), we agree with the district court that Jackson's claim of a violation of procedural due process is unripe and subject to dismissal.

Jackson next argues that the district court erroneously concluded that his equal-protection claim likewise is subject to the exhaustion requirement. Jackson insists

that no "logical, rational, or legitimate state purpose" underlies the decision to permit commercial use on the property across the street from him, and thus, he says, his complaint states an equal-protection claim independent of his takings claim. But neither can Jackson dodge *Williamson County* by recasting his takings claim as one arising under the Equal Protection Clause. If, as here, a plaintiff's contentions come down to an accusation that a government entity greatly diminished the value of his property, then pursuant to *Williamson County* he must go to state court because the claim is "truly (and solely) one for a taking." *Patel v. City of Chicago*, 383 F.3d 569, 573 (7th Cir. 2004) (quoting *Hager v. City of West Peoria*, 84 F.3d 865, 870 (7th Cir. 1996)). The premise of Jackson's equal-protection claim is that other Village residents (including some defendants) benefitted from the commercial use while those residents on his side of the street were adversely affected. He reasons that Village officials treated him differently (and out of spite, no less) simply because the commercial use was allowed over his objections. But this same assumption is the basis for Jackson's real grievance: that the zoning changes lowered the value of his property. And that is a takings claim that he must litigate first in state court.

Moreover, we agree with the district court that Jackson's complaint does not plausibly allege that the defendants acted out of spite targeted at him. As we recently explained, even at the pleading stage a class-of-one plaintiff must negate "'any reasonably conceivable state of facts that could provide a rational basis.'" *Miller v. City of Monona*, No. 13-2575, 2015 WL 1947886, *7 (7th Cir. May 1, 2015) (quoting *Scherr v. City of Chicago*, 757 F.3d 593, 598 (7th Cir. 2014)). And so long as "'we can come up with a rational basis for the challenged action, that will be the end of the matter—animus or no.'" *Id.* (quoting *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014)). Jackson pleaded himself out of court because his complaint reveals an obvious rational basis for the Village's actions: The owners of the land across the street have a stake in developing their property for commercial use. Jackson is not a "target" of this interest; his complaint acknowledges that the developers and Village officials were negotiating plans to build a commercial center even before he bought his house. For Jackson's theory to hold water, one would have to assume that Village officials would have turned away the developers if anyone other than Jackson had bought his house. And though only Jackson's house is directly across the street from the commercial development, he does not allege that he has suffered harm uniquely intended for him. To the contrary, he alleges that his neighbors (including one of the defendant developers) have shared in the downturn in property values.

Next, Jackson maintains that the district court misunderstood the basis of his First Amendment claim. Jackson elaborates on appeal that several Village officials were represented by the law firm that employs the Village attorney; this "conflict of interest," Jackson explains, led to political corruption "such that Plaintiff never stood (or stands) a chance of receiving legitimate consideration" when attempting to petition the Village. But a plaintiff must allege that state actors actually interfered with his access to the courts to state a claim for relief under the First Amendment. *See Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 789–90 (6th Cir. 2007); *see also Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000). Here, Jackson does not allege that a state actor interfered with this suit or the 2001 state suit; the retail developers' "threat" to protect their private interests does not show any interference by state actors. Furthermore, the sheer amount of Jackson's participation in the zoning disputes—including hiring counsel, voicing concerns at public meetings, and attending a workshop—belies any claim that his First Amendment rights were impeded.

Still, says Jackson, the district court ignored his alternative theory that the defendants conspired to deny him access to the state courts in violation of 42 U.S.C. § 1985(2) and (3). But a plaintiff must allege a racial or class-based animus to state a claim under § 1985, *see Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1507 (7th Cir. 1994), which Jackson has not done.

Finally, we briefly address Jackson's remaining arguments. Because his complaint was properly dismissed for lack of jurisdiction and failure to state a claim, any procedural irregularity in denying the motion for default judgment before dismissing the complaint was not an abuse of discretion. *See Mommaerts v. Hartford Life & Accident Ins. Co.*, 472 F.3d 967, 968–69 (7th Cir. 2007). Furthermore, because Jackson did not challenge the defendants' method of serving their motion to dismiss in the district court, he waived this argument for appeal. *See Kathrein v. City of Evanston, Ill.*, 752 F.3d 680, 688–89 (7th Cir. 2014); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007). Lastly, the district court did not abuse its discretion in relinquishing jurisdiction over the state-law claims after properly dismissing the federal claims. *See Capeheart v. Terrell*, 695 F.3d 681, 686 (7th Cir. 2012); *RWJ Mgmt. Co., Inc. v. BP Products North America, Inc.*, 672 F.3d 476, 479 (7th Cir. 2012).

AFFIRMED.