NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 16, 2018[*]
Decided March 20, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 17-1107

| | |
|---|---|
| KIRK SWAGGERTY, | Appeal from the United States District Court |
| *Plaintiff-Appellant*, | for the Northern District of Illinois, |
| | Western Division. |
| *v.* | |
| | No. 16 C 50276 |
| JULIE TREVARTHEN, et al., | |
| *Defendants-Appellees*. | Frederick J. Kapala, |
| | *Judge*. |

---

[*] The appellees were not served with process in the district court and are not participating in this appeal. We have agreed to decide this case without oral argument because the appellant's brief and the record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

# O R D E R

Kirk Swaggerty blames his attorney, a detective, and three state prosecutors for an attack on him in prison instigated by an inmate against whom Swaggerty had testified. The district court dismissed Swaggerty's complaint for failure to state a federal claim. According to Swaggerty's allegations, the defendants did not cause the attack, and they are otherwise not liable, so we affirm the judgment.

Swaggerty's operative complaint alleges the following facts, which we accept as true for purposes of this appeal. *See Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017). Swaggerty met with the State's Attorney of DeKalb County (Clay Campbell) in April 2012 about informing on two murder defendants, Michael Greenwell and Jack McCullough. Swaggerty had met both men while he was detained with them in county jails. He said that they each had disclosed to him details of their crimes. Swaggerty agreed to cooperate if Campbell tried to keep his name "out of it" and ensured that he was not incarcerated in the same facility as McCullough or Greenwell. Campbell assured Swaggerty that he would "do everything he could."

Swaggerty and his defense lawyer met in September 2012 with two assistant prosecutors to discuss Swaggerty's potential testimony at McCullough's murder trial. Swaggerty thought he deserved "a deal" for any testimony because he had already provided "helpful" information against Greenwell "in return for nothing." The prosecutors rejected Swaggerty's proposal, explaining that a deal would discredit him. His lawyer encouraged Swaggerty to testify without a deal, explaining that he "[did] not have a choice" because he faced a long sentence if he did not cooperate. Without a deal, Swaggerty refused to testify.

After Swaggerty rebuffed the request to testify, he learned about an article covering McCullough's trial. The article said that McCullough considered Swaggerty a "snitch" and, as a result, asked two detainees to "do something to [Swaggerty]." Taking McCullough's threat seriously, Swaggerty met again with his lawyer and the assistant prosecutors. He was upset that McCullough considered him a snitch. One of the assistant prosecutors offered to testify for Swaggerty at an upcoming hearing on his motion to reconsider his criminal sentence, if he testified against McCullough. A detective also promised to testify at Swaggerty's hearing. After receiving these promises, Swaggerty agreed to testify against McCullough.

Swaggerty alleges that, after he agreed to testify, the defendants broke several promises. First, Campbell allegedly released Swaggerty's name as a witness to

McCullough's lawyer and to the media. Second, although the Department of Corrections had placed McCullough and Greenwell on a list of prisoners to keep separated from Swaggerty, the Department confined them at times to the same institution. Their mutual proximity led to threats against Swaggerty. And more than two years after the trial, these threats twice escalated into violence: a friend of McCullough's slammed Swaggerty against a wall in 2014 and punched him in 2016. Finally, Swaggerty's motion to reconsider his sentence was denied in 2014; none of the defendants testified on his behalf.

After the second assault, Swaggerty brought this civil rights suit under 42 U.S.C. § 1983. He contends that Campbell, his lawyer, the two assistant prosecutors, and the detective unconstitutionally failed to protect him from his fellow inmates and failed to offer mitigating evidence at Swaggerty's hearing. He also asserts state-law claims of intentional infliction of emotional distress and legal malpractice. The district judge dismissed the federal claims at screening for failure to state a claim and dismissed the state-law claims by declining to exercise supplemental jurisdiction. *See* 28 U.S.C. § 1915A.

The claims against the defense attorney and prosecutors fail as a matter of law. As the district court correctly noted, defense attorneys are not "state actors" for purposes of § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). And "[p]rosecutors are absolutely immune for actions they undertake in their capacities as prosecutor …." *Archer v. Chisholm*, 870 F.3d 603, 612 (7th Cir. 2017) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976)). The immunity covers any in-court statements or trial-based dealings with McCullough's lawyer. *Id.* Swaggerty complains that before trial the prosecutors released his name to McCullough in order to persuade McCullough to accept a plea agreement. But plea negotiations are a core prosecutorial function protected by absolute immunity. *See Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995). Swaggerty also seems to fault Campbell for releasing his name to the media before he testified. It is true that a prosecutor's "statements to the media are not entitled to absolute immunity." *Buckley v. Fitzsimmons*, 509 U.S. 259, 277 (1993); *Katz-Crank v. Haskett*, 843 F.3d 641, 647 (7th Cir. 2016). But here Swaggerty runs into a causation problem. He alleges that, *before* Campbell released Swaggerty's name to the media, McCullough already considered Swaggerty a "snitch" *and* planned to retaliate by enlisting others to harm him, as eventually transpired. So Campbell's statements to the media did nothing to cause the harm that Swaggerty alleges McCullough had already set in motion.

Beyond these impediments, Swaggerty's claims against the state defendants also fail because the Constitution generally does not require state authorities to protect citizens from third-party violence. *See DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 196–97 (1989). And neither exception to this general rule applies. The named defendants were not his custodians, and they did not create the risk that, if Swaggerty testified against McCullough, the latter might retaliate. *See Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015). Swaggerty responds that he would not have testified had defendants not promised to testify on his behalf and to separate him from McCullough in prison. But these alleged promises did not create the risk of an attack. That risk already existed. Again, according to Swaggerty, before the defendants made their alleged promise to testify for him, McCullough had already considered Swaggerty a snitch and planned revenge. And according to the complaint, the defendants *did* tell prison authorities to keep Swaggerty separated from McCullough, because prison documents so directed. True, the Department of Corrections apparently did not always carry out that direction, but the named defendants are not liable for the alleged errors of the Department.

Finally, because the district judge correctly dismissed Swaggerty's federal claims for failure to state a claim, the judge properly declined to exercise jurisdiction over Swaggerty's state-law claims. *See* 28 U.S.C. 1367(c); *Hagan v. Quinn*, 867 F.3d 816, 829–30 (7th Cir. 2017).

AFFIRMED